**No. 18-5261**                     **September Term, 2018**

**1:16-cv-00259-BAH**

**Filed On:**  September 15, 2018

Citizens for Responsibility and Ethics in
Washington and Nicholas Mezlak,

           Appellees

    v.

Federal Election Commission,

           Appellee

Crossroads Grassroots Policy Strategies,

           Appellant

         **BEFORE:**    Henderson, Millett, and Wilkins, Circuit Judges

**O R D E R**

Upon consideration of Crossroads Grassroots Policy Strategies' emergency motion for a stay pending appeal, the responses thereto, the reply, the motion for leave to file a surreply, and the lodged surreply, it is

**ORDERED** that the motion for leave to file a surreply be granted. The Clerk is directed to file the lodged surreply. It is

**FURTHER ORDERED** that the emergency motion for a stay pending appeal of the district court's order vacating 11 C.F.R § 109.10(e)(1)(vi) be denied. Appellant has not satisfied the stringent requirements for a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *D.C. Circuit Handbook of Practice and Internal Procedures* 33 (2018).

**A**

The question in this case is whether the plain text of the Federal Election Campaign Act, 52 U.S.C. §§ 30101 *et seq.*, forecloses a Federal Election Commission ("Commission") regulation that sharply narrows the obligation of independent committees to disclose

significant donations to support independent expenditures specifically intended to influence the outcome of a federal election. The Federal Election Campaign Act, *id.* § 30104(c), expressly requires all persons who are not political committees—whom we shall call "independent committees"—to file quarterly reports that, *inter alia*, identify "each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering *an* independent expenditure." *Id.* § 30104(c)(2)(C) (emphasis added). Even more broadly, Section 30104(c)(1) requires that "[e]very [independent committee] who makes independent expenditures in an aggregate amount or value in excess of $250 during a calendar year shall file a statement containing the information required under [§ 30104](b)(3)(A) for *all* contributions received by such person." *Id.* § 30104(c)(1) (emphasis added). The referenced subsection (b)(3)(A) requires the disclosure of all those who make contributions, *see id.* § 30104(b)(3)(A), with contributions defined broadly as including donations intended to "influenc[e] any election for Federal office[,]" *id.* § 30101(8)(A)(i), or funds "earmarked for political purposes," *Buckley v. Valeo*, 424 U.S. 1, 80 (1976).

The vacated regulation that Appellant Crossroads Grassroots Policy Strategies ("Crossroads") wishes to revive pending appeal, by contrast, requires independent committees to report each person who contributed more than $200 if, and only if, that donor's contribution "was made for the purpose of furthering *the* reported independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi) (emphasis added).

**B**

This case arose out of press reports of a 2012 event hosted by American Crossroads, a "super PAC" affiliated with Crossroads, in Tampa, Florida. Karl Rove briefed attendees at the meeting that an anonymous donor had presented Crossroads with a three million dollar "matching challenge" to support the Republican challenger in the 2012 Ohio Senate race. Without specifying precisely how the funds should be spent, the anonymous donor made clear they should be dedicated to supporting the Republican in the Ohio race. The matching challenge prompted an additional $1.3 million for "general use in Ohio." Dist. Ct. Op. at 7.

Appellees Nicholas Mezlak and Citizens for Responsibility & Ethics in Washington (collectively, "Mezlak") filed an administrative complaint with the Commission alleging that Crossroads unlawfully failed to report contributions it received for those independent expenditures supporting the Republican in the Ohio election, including the disclosure of the donors who funded the advertisement campaign. The nature of the allegations prompted

the Commission's Office of General Counsel to observe the discrepancy between the scope of disclosure required by the Federal Election Campaign Act and the Commission's regulation, 11 C.F.R. § 109.10(e)(1)(vi). *See* First General Counsel's Report, dated Mar. 7, 2014 ("FGCR") at 12 n.57 (explaining that subsection (c)(2), which "specifically mandates disclosure of the identity of those who contribute for the purpose of furthering 'an independent expenditure,'" may take "an arguably more expansive approach" to disclosure than the challenged regulation). The General Counsel nonetheless recommended dismissal of the complaint in reliance on the regulation. *Id.* at 13. The Commission deadlocked 3-3 on Mezlak's complaint. Mezlak then filed suit in district court challenging that decision. 52 U.S.C. § 30109(a)(8).

In a thorough opinion, the district court ruled that the regulation could not survive review under step one of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). By order dated August 3, 2018, the court (i) ruled that the Commission's dismissal of Mezlak's complaint was "contrary to law" and remanded the complaint for reconsideration, and (ii) vacated the regulation. The district court then stayed its vacatur for 45 days to allow the agency, if it chose, to promulgate interim regulations that comport with 52 U.S.C. § 30104(c). Dist. Ct. Op. at 112.

Crossroads sought an emergency stay of the district court's decision with this court. The Commission has advised that it does not seek a stay and that it has already acted on the remanded complaint, ordering it dismissed. According to the parties, the Commission's dismissal of the complaint moots Crossroads' challenge to that portion of the district court's order.

## C

Crossroads' motion for a stay fails every prong of the showing required to obtain the extraordinary relief of a stay pending appeal. *See Nken*, 556 U.S. at 433-434.

## 1

With respect to one of the two "most critical" prongs of the test for a stay, *Nken*, 556 U.S. at 434 (internal quotation marks and citations omitted), Crossroads has not established a likelihood of success on the merits. More specifically, as the Commission's General Counsel worried, the regulation squeezes the Act's explicit disclosure obligation beyond what the plain statutory text can bear. In particular, the regulation shrinks the statutory duty to disclose contributions intended for "an expenditure" down to only those donations intended to support "the" specific "reported independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi). In doing so, the Commission's regulation confines the reporting obligation to only that small subset of donors who not only earmark their contributions for a particular cause or candidate for the specific purpose of influencing the outcome of an

identified election, but also pick the script of an independent expenditure that matches the actual form reported. Thus, the regulation empties Subsection (c)(1)'s disclosure obligation of a large portion of its intended operation.

Crossroads tries to marshal an argument that could give its appeal some promise, but is unable to demonstrate any "likelihood" of success, and certainly not a "substantial" one. *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 505 n.1 (D.C. Cir. 2016).

Crossroads' chief contention is that "an" independent expenditure in 52 U.S.C. § 30104(c)(2)(C) really means "the" specific independent expenditure reported. Under that view, donations expressly given to support the running of a battery of as-yet unidentified advertisements expressly for or against a particular candidate need not be reported. As for the disclosure requirement of subsection (c)(1), Crossroads insists that statutory text is mere preamble. *See* Crossroads' Motion for Stay at 7.

The problem is that, to support its proposed interpretation, Crossroads relies on (debatable) legislative history and post-enactment congressional inaction. But where, as here, the "text alone is enough to resolve th[e] case," *Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018), we will not "resort to legislative history to cloud a statutory text that is clear," *Ratzlaf v. United States*, 510 U.S. 135, 147–148 (1994). And in the absence of textual ambiguity, the suggestion of congressional acquiescence cannot change the plain meaning of enacted text. *Texas Dep't of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2540 (2015); *see Johnson v. Transportation Agency*, 480 U.S. 616, 672-673 (1987) (Scalia, J., dissenting).

Crossroads, fairly enough, emphasizes the age of the regulation. But unlike fine wines, regulations that so materially rewrite and recast plain statutory text do not improve with age. *See also Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting) ("Wisdom too often never comes, and so one ought not to reject it merely because it comes late.").

Crossroads next insists that, if the text were plain, the district court's decision would have been shorter. That argument does not hold water. In actuality, the district court's opinion spent just twelve pages analyzing the plain text of two interrelated statutory provisions: (c)(1) and (c)(2)(C). The balance of the opinion is devoted to background sections, dismantling Crossroads' and the Commission's varied efforts to manufacture ambiguity, and disposing of other issues in the case.

Crossroads' remaining contentions fare no better. Crossroads asserts that Mezlak's challenge comes too late. But the law is well-settled that "those [adversely] affected" by an agency's application of a rule "may challenge that application on the ground that it conflicts with the statute from which its authority derives." *Weaver v. Federal Motor Carrier*

*Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014) (internal quotation marks and citation omitted); *AT&T Co. v. FCC*, 978 F.2d 727, 734 (D.C. Cir. 1992); *NLRB Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 195-196 (D.C. Cir. 1987). By relying on the challenged regulation to dismiss Mezlak's complaint and to deny Mezlak's statutory right to information, the Commission cannot insulate its regulation from a challenge as to its legal invalidity.

Finally, for the first time in its reply brief, Crossroads suggests vaguely that the Commission's recent dismissal of Mezlak's complaint on remand *after* the district court's decision somehow "moots" Mezlak's challenge to the regulation. That argument is wrong chronologically since it post-dates the decision under review, and, in any event, the dismissal on remand actually indicates that the regulation is *continuing* to deprive Mezlak of the information it seeks and certainly is capable of repetition.

In short, Crossroads' appeal shows little prospect of success—an arguably fatal flaw for a stay application. *See Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) ((declining to decide whether likelihood of success is "an independent, free-standing requirement, or whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a serious legal question on the merits") (internal quotation marks omitted)).

**2**

Crossroads fares no better on the second "critical' factor—showing irreparable harm to its legal interests. *See Nken*, 556 U.S. at 434. Irreparable harm must be "both certain and great[,]" and "actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Crossroads' asserted injury is neither.

First, Crossroads says that the district court's temporary stay of the vacatur has left it with inadequate guidance three months before an election, chilling both contributions and its "ability" to speak. Crossroads' Motion for Stay, Affidavit of Steven Law ("Law Aff.") at 2-3 ¶¶ 8,10. Any lack of clarity attributed to the district court's temporary stay order expires in 72 hours (on the 45th day after the district court's decision), so cannot possibly support a stay pending appeal.

As for the claims that Crossroads' donors had an "implicit understanding" that they could make donations for independent expenditures intended to influence the outcome of an election without their contributions being disclosed, Law Aff. at 2 ¶ 6, the Supreme Court has been clear: Parties who assert a chilling effect from disclosure requirements must offer actual "evidence that * * * members may face * * * threats or reprisals." *Citizens United v. FEC*, 558 U.S. 310, 370 (2010). Crossroads has made no effort to do that. Nor does

Crossroads offer any briefing or argument to establish that an intrusion on private donors' implicit understanding constitutes an irreparable injury to Crossroads itself.

Nor does Crossroads identify any actual independent expenditures it has made this quarter or had intended to make in the coming months that are deterred by the order. It says only that it "would like to maintain the ability to continue making independent expenditures[,]" and feels "deterred and constrained" from doing so. Law Aff. at 2-3 ¶ 10. Nothing in the district court's order prohibits the making of independent expenditures. The order only affects quarterly reporting.

In short, the irreparable injuries asserted fail to rise beyond the speculative level. *See United States v. Finance Comm. to Re-Elect the President*, 507 F.2d 1194, 1200 (D.C. Cir. 1974).

**3**

Finally, the harm to Mezlak's and the public's interest weighs against a stay. It is well settled that "[d]isclosure [requirements are] justified * * * on the ground that they [ ] help citizens make informed choices in the political marketplace." *Citizens United,* 558 U.S. at 369 (internal quotation marks and citations omitted). And here, where the complained-of disclosure covers only those who donate money *for the intended purpose of influencing an election*, the interest in anonymity does not, for purposes of an exceptional stay, outweigh Mezlak's and the public's countervailing interests in receiving important voting information and in transparency. *See Buckley*, 424 U.S. at 68 (describing disclosure as "the least restrictive means of curbing the evils of campaign ignorance and corruption"); *SpeechNow.org v. FEC,* 599 F.3d 686, 696 (D.C. Cir. 2010) (en banc) ((justifying the Federal Election Campaign Act's disclosure requirements "based on a governmental interest in providing the electorate with information about the sources of political campaign funds") (internal quotation marks, some formatting, and citations omitted)).

<u>**Per Curiam**</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/

Lynda M. Flippin
Deputy Clerk